(165 App. Div. 697)

## JOHNSON v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    January 15, 1915.)

1. MASTER AND SERVANT (§ 177*)—INJURIES TO SERVANT—FELLOW SERVANTS—
NEGLIGENCE.
    Where the negligence of decedent's fellow servant, who aided in constructing a scaffold by the fall of which decedent received injuries from which he died, contributed to the accident, there was no common-law liability on defendant for decedent's death.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 352, 353; Dec. Dig. § 177.*]

2. MASTER AND SERVANT (§ 116*)—DEATH OF SERVANT—SCAFFOLD—INSUFFI
CIENCY.
    Where decedent was killed by the fall of a portion of a scaffold as he and a fellow servant were engaged in removing it, and it appeared that from the time of its construction it was unsafe, unsuitable, and improper, and not so constructed as to give proper protection to life and limb of workmen using it, and was so maintained by defendant until deceased was injured, in consequence of the improper and unsafe construction which was the proximate cause of such injury, plaintiff was entitled to recover for decedent's death under the provision of the Labor Law (Consol. Laws, c. 31) requiring the master to construct safe scaffolds, etc.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

3. MASTER AND SERVANT (§ 289*)—DEATH OF SERVANT—DEFECTIVE SCAFFOLD—
FAILURE TO OBTAIN LADDER.
    Where decedent received injuries from which he died by reason of the defective scaffold while assisting another servant to dismantle the same, his failure to comply with the direction of his foreman to use a ladder in the work bore on the question of contributory negligence only, which was a question for the jury.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

Appeal from Trial Term, Kings County.

Action by Dora Johnson, as administratrix of Charles Johnson, deceased, against the City of New York. From a judgment for defendant, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Martin T. Manton, of New York City (Vine H. Smith, of New York City, on the brief), for appellant.

Frank Julian Price, of Brooklyn (Thomas F. Magner, of Brooklyn, on the brief), for respondent.

RICH, J.   This appeal is from a judgment dismissing the plaintiff's complaint at the close of the evidence, in an action to recover for negligence.   The deceased was a painter and expert rigger in the employ of defendant's bridge department, which was engaged in December, 1912, in painting the structural iron work of the Brooklyn Bridge where it crosses Main street in the borough of Brooklyn.   To reach the iron work a swinging scaffold in two sections was constructed, about 30 or 35 feet above and across the street, of four spars, each

about 40 feet long, hung with a block and fall from the bridge and a belly line in the center. The spars were about 16 feet apart, and cross-planks were laid across them, two together, at intervals, on which laid the planks forming the flooring of the scaffold, running in the same direction as the spars. The block and fall on top, where connected with the girder, was what is known as a "two-sheave block," and there was a single sheave block connected to a sling on the end of each spar, and the center or belly line was made fast to the iron work of the bridge and extended down to the center of each spar, where it was fastened.

The accident occurred on Tuesday, December 10, 1912, at about 4 o'clock p. m. The scaffold was constructed by four riggers, of whom the deceased was one, and finished at about 10 o'clock in the forenoon of the preceding Saturday, and had been used by the defendant's painters, some 20 in number, without accident during the interval after its completion. At about half past 2 or 3 o'clock on the day of the accident, the painting at that point had been finished, and orders were given to dismantle the scaffold. Workmen were sent up to lower the plank used in its construction, which was done by means of a rope called a "heaving line." One plank was left, by order of the foreman, for use in steadying the spars while taking off the center lines. The deceased and one Haynes were then directed to remove these lines, preparatory to lowering the spars with the blocks and tackle. The manner of doing such work was for the men to sit on the spars (astride) at the end, with the plank in front of them resting on the spars on which they were sitting. They would then lift themselves clear of the spars by means of the plank, and hitch themselves along on the spars towards the center, pushing the plank in front of them. Haynes and the deceased, following this method, had reached the center of the two end spars. The deceased unloosened the center line of the spar he was on, and as he started to go on the spar tilted and one end dropped, throwing him to the ground and causing injuries resulting in his death. It appears that the fall of the spar was due to the negligence of Collins, a fellow servant of the deceased, who aided in constructing the scaffold, and who, before the day of the accident, in making a change in the tackle at the end of the spar, cut off the mousing from the back of the hook and neglected to replace it, or, if it was replaced, left it untied and unfit to hold the spar-supporting strap securely in the hook. The evidence tends to support the conclusion that he placed the supporting strap in this hook improperly and in such a manner that it was liable to come out of the hook exactly as it did when the spar fell.

[1, 2] For the negligence of Collins the defendant was not liable, and the learned trial court properly held that upon the uncontroverted facts the plaintiff could not maintain her action as one at common law. It was further held that the accident happened while the scaffold was not in use as a scaffold, after the completion of the painting, and while the deceased and his fellow workman were engaged in the last part of the work of dismantling it, and the case therefore was "not one in which the scaffold provision of the Labor Law is applicable." In reaching this conclusion the learned trial court overlooked the dis-

tinguishing fact which, in my judgment, differentiates the case at bar from those where the accident was caused by a defect due to the dismantling of the scaffold. The jury might have found that the accident resulted from the defective, insecure, and improper fastening of the end of one of the spars forming part of the scaffold and the foundation upon which its flooring was laid, as originally constructed and maintained. While it is true that the scaffold did not fall while beng used by the painters, it is equally true that at all times after its completion it was within the condemnation of the provision of the Labor Law relating to scaffolds. The jury would have been justi-fied in finding that it was, from the time of its construction, an unsafe, unsuitable, and improper scaffold, not so constructed as to give proper protection to the life and limb of workmen using it, and was so maintained by the defendant until the deceased was injured, and that he was injured in consequence of the improper and unsafe construction, which was the proximate cause of his injury. I regard Jones v. Gamble, 140 App. Div. 733, 126 N. Y. Supp. 143, an authority for holding the case to be within the statute. The plaintiff was therefore entitled to have her case submitted to the jury.

[3] It is contended by the respondent that the foreman, in ordering the deceased and his coworker to remove the center fastenings, directed them to get a ladder for that purpose, and the fact that they did not comply with such instruction precludes the plaintiff from recovering damages for the death of her intestate. It appears that there was no ladder at the place where the deceased was working suitable for use in the work he was directed to do. There was only one 20-foot ladder on the job, and the scaffolding to be reached was from 30 to 35 feet from the ground. Defendant's foreman testified that their yard, where their appliances were kept, was about four blocks distant from the place where the work was being done, and that in the yard were rung ladders long enough to reach the scaffold. It seems to me that the failure to get a ladder, if directed, is limited in its effect to establishing contributory negligence on the part of the deceased, which was likewise a question for the jury. Besides this, it does not appear that the deceased heard, or was where he could have heard, the direction, if given, or that he knew of the existence or location of the yard.

As these conclusions make a new trial necessary, it is unnecessary to consider the other questions presented, with the exception of calling attention to the fact, for the guidance of the trial court, that the rule of law relied on by the appellant to sustain her contention, that the customary methods of constructing and dismantling scaffolds were competent in determining the question of fact whether the devices furnished and precautions taken in this particular case were such as were in customary and general use for the same purposes, is applicable only in an action at common law to determine the negligence of the master, and the contention is therefore without merit or force, as a recovery at common law cannot be had in this action, and the testimony offered upon this subject was properly excluded.

Judgment reversed, and new trial granted; costs to abide the event. All concur.